**ALLIED MECHANICAL CONTRACTORS, INC.,**
Plaintiff,

v.

**The INDUSTRIAL RELATIONS COUNCIL FOR the PLUMBING AND PIPE FITTING INDUSTRY and Local Union No. 96, Local Union No. 640, Local Union No. 785, Local Union No. 327, and Local Union No. 487 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (AFL–CIO), Defendants.**

No. C–C–87–0398–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 2, 1988.

As Amended May 24, 1988.

William H. Sturges, Weinstein & Sturges, P.A., Charlotte, N.C., Charles R. Volk, Jane A. Lewis, Volk, Frankovitch, Anetakis, Recht, Robertson & Hellerstedt, Pittsburgh, Pa., for plaintiff.

Daniel S. Walden, Winston–Salem, N.C., Dailey J. Derr, Harlow, Derr & Stark, Research Triangle Park, N.C., Arthur C. Chapman, Chapman & Roin, Chicago, Ill., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

### PRELIMINARY STATEMENT

THIS MATTER is before the Court on Defendants' Motions to Dismiss, filed March 9, 1988 and March 11, 1988. The underlying claims in this action involve questions of federal labor law arising out of a collective bargaining agreement between Allied Mechanical Contractors, Inc. ("Allied") and Local Union No. 96, Local Union No. 640, Local Union No. 785, Local Union No. 327, and Local Union No. 487 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (AFL–CIO) ("the Local Unions"). Allied is the Plaintiff in this suit and the Local Unions are Defendants. Allied has also joined the Industrial Relations Council for the Plumbing and Pipe Fitting Industry ("the IRC") as a Defendant in this action because, pursuant to a procedure mandated by the collective bargaining agreement, the IRC rendered a decision that Allied con-

tends is illegitmate and invalid. The Local Unions insist that the IRC's decision is valid, and, therefore, Allied has brought the instant suit to have the IRC's decision vacated or, in the alternative, declared illegitimate and invalid.

Defendants first assert that Allied's suit should be dismissed on the ground that this Court lacks subject-matter jurisdiction over Allied's federal labor law claims. At the outset, Defendants acknowledge that Section 301 of the Labor Management Relations Act ("the LMRA" or "the Act"), 29 U.S.C. § 185, has been interpreted so as to confer upon the federal district courts subject-matter jurisdiction to enforce and to vacate arbitration awards determining the rights and obligations of the parties under the terms of a collective bargaining agreement. These types arbitration awards are the result of "rights" or "grievance" arbitration, which employers and employees often include as part of their collective bargaining agreements. In addition, some federal courts have held that Section 301 of the LMRA also confers subject-matter jurisdiction upon the federal district courts to enforce arbitration awards determining the terms and conditions of collective bargaining agreements. These types of arbitration awards are the result of "interests" or "legislative" arbitration.

Defendants argue at length, however, that pursuant to the terms and procedures of the collective bargaining agreement, and by subsequent additional mutual consent of the parties, the IRC acted as a second-level or second-tier negotiator in a bi-level negotiating process, rather than as any type of arbitration body. Defendants assert that this Court is without subject-matter jurisdiction to entertain Allied's claims because there is no arbitration decision and because there is no case law establishing that the district courts have subject-matter jurisdiction to vacate the results of collective bargaining negotiations. Defendants' arguments on this aspect of subject-matter jurisdiction under Section 301 of the LMRA appear to present this Court with a novel question of law: Does Section 301 of the LMRA give subject-matter jurisdiction to the federal district courts over suits brought to vacate the final results of second-level negotiations which were conducted as prescribed by the terms of an existing collective bargaining agreement?

In addition, the IRC asserts that Allied's suit should be dismissed as to the IRC on the ground this Court lacks jurisdiction over it. The IRC first claims that it is not a signatory to the collective bargaining agreement, and, therefore, no action can be brought against it under Section 301 of the LMRA. The IRC also claims that Allied's service of process upon the IRC was ineffective.

Finally, Defendants contend that one of Allied's claims, that the IRC breached a duty of fair representation allegedly owed to Allied, must be dismissed because it fails to state a claim upon which relief can be granted.

As explained below, Defendants' Motions will be denied in part because Section 301 of the LMRA gives this Court subject-matter jurisdiction over the claims raised by Allied. Defendants' Motion will be granted in part because the IRC is not a proper party to a suit under Section 301 of the LMRA, and because Allied's claim against the IRC for an alleged breach of a duty of fair representation fails to state a claim upon which relief can be granted.

### THE PARTIES

Allied is an association of contractors engaged in the plumbing and pipe fitting industry throughout North Carolina. Allied is affiliated with the Mechanical Contractors Association of America, Inc. ("the MCAA"), which is an employer association. Individual contractors affiliated with Allied employ members of the Local Unions. Allied has its principal place of business in Charlotte, North Carolina.

The Local Unions are labor organizations representing members employed in the plumbing and pipe fitting industry throughout North Carolina. The Local Unions are affiliated with the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO ("the United

Association"). The Local Unions maintain a place of business in Charlotte, North Carolina.

The IRC is a board designated under the collective bargaining agreement between Allied and the Local Unions to hear and decide issues submitted to it for resolution. The IRC was established in 1950 for the purpose of promoting peaceful industrial relations between employees and employers in the plumbing, heating, and cooling industry. Three groups formed the IRC: The United Association, the MCAA, and the National Association of Plumbing, Heating and Cooling Contractors ("the NAP"), which is another employer association. There are eight membership places on the IRC, and eight individuals serve in the positions. The United Association appoints four members, and the MCAA and the NAP each appoint two members. The IRC maintains its office in Chicago, Illinois.

### BACKGROUND OF THE DISPUTE

On June 30, 1981, the Local Unions and Allied entered into a collective bargaining agreement ("the Agreement"). According to Article XXII of the Agreement, which governs duration and termination, the term of the Agreement was to be from July 1, 1981 until June 30, 1985. On June 13, 1985, the parties agreed to extend the Agreement until June 30, 1988 and also agreed that issues concerning wage and fringe benefits would be reopened for renegotiation in 1986 and 1987.

Prior to termination of the Agreement, Allied and the Local Unions began negotiations on new contract terms, but they were unable to reach agreement on certain issues. Article XXII, in addition to setting the initial duration of the Agreement, also provides mechanisms designed by the parties for the resolution of disputes between them concerning new contractual terms and extensions, and it states, in pertinent part, the following:

### DURATION AND TERMINATION

This Agreement as amended shall be in full force and effect from date of execution to June 30, 1984 and from year to year thereafter, unless notice of termination or modification is given in writing by either ... Allied ... or the [Local] Union[s], one to the other one hundred eighty (180) days prior to each anniversary date of July 1. Such notice of modifications shall not be valid unless accompanied by a detailed, specific list of all proposed modifications.

Negotiators for the parties shall hold their first meeting to discuss new contract terms not later than two (2) weeks following receipt of such notice, and thereafter meetings for further negotiations shall be held at least once each week until agreement on a new contract is reached. Should the parties to this contract be unable to settle any issues over wages, hours, or working conditions thirty (30) days prior to July 1, 1984, then the matter shall be submitted and the issues referred to the [IRC]. Should the [IRC] not be functioning at such time, then the parties agree to the principal [sic] of mandatory binding arbitration and the matter will be submitted to the Joint Conference Board as promulgated and constituted by this Agreement and the Joint Conference Committee sitting as the Joint Arbitration Committee shall elect a method for final and binding arbitration.

Pending decision of the [IRC], the Joint Conference Board, and any other and all arbitrators or arbitration boards, employees shall continue to work under the terms and conditions of this Agreement which shall remain in effect and full force. The decision by the [IRC], Joint Conference Board, or any arbitrators or arbitration body selected by the Joint Conference Board shall be binding on all parties.

Complaint Exh. A, *Allied Mechanical Contractors v. IRC*, C–C–87–398–P (filed Aug. 27, 1987).

Pursuant to Article XXII Allied and the Local Unions submitted four unresolved issues to the IRC for determination. The issues were as follows:

1) Wage Rates under Article IX of the Agreement, which governs Wage Schedules;

2) Contribution Rate under Article XII of the Agreement, which governs the Health and Welfare Plan;

3) "New Article, Organizing Fund"; and

4) "Article XXI, Industrial Promotion Fund, Future of Fund."

First Amended Complaint at 3, *Allied Mechanical Contractors v. IRC*, C–C–87–398–P (filed Feb. 25, 1988).

On June 5, 1987, in Denver, Colorado, the IRC conducted proceedings on the issues the parties had submitted to it. The IRC received written and oral submissions from both Allied and the Local Unions. On that same day, after conducting meetings with the parties, the IRC issued Decision 87–200, *see* Complaint Exh. B, which is the focus of the present controversy between the parties. Seven members of the eight member body signed Decision 87–200. Affidavit of Edward R. Teske Exh. D, *Allied Mechanical Contractors v. IRC*, C–C–87–398–P (filed Jan. 19, 1988).

The IRC decided issues one through three by establishing the following wage and contribution schedule:

| | Service/Control/Field Constr. | | Southland Indus. Park | |
| --- | --- | --- | --- | --- |
| | 7/1/87 | 7/1/88 | 7/1/87 | 7/1/88 |
| Base Wage | $13.90 | $14.20 | $13.65 | $13.65 |
| Health & Welfare | .90 | 1.00 | .90 | 1.00 |
| Pension | 1.00 | 1.00 | 1.00 | 1.00 |
| State Association Fund | .03 | .03 | .03 | .03 |
| Apprentice Fund | .02 | .02 | .02 | .02 |
| Special Education Fund* | .05 | .05 | .05 | .05 |

* A new "Special Education Fund shall be established, effective with the first full payroll in July 1987 through the sum of 5 cents per hour for which each employee is paid, for all employees covered by the Working Agreement. Said fund is to be administered by representatives of the Labor Unions party to this Agreement.

Complaint Exh. B, *Allied Mechanical Contractors v. IRC*, C–C–87–398–P. The IRC decided issue four by discontinuing the Industrial Promotion Fund established in Article XXI of the Agreement.

As noted above, the Agreement was to terminate June 30, 1988, but Decision 87–200 established a wage and contribution schedule to be used *beyond* the expiration date. On or about June 23, 1987, Allied sent a letter to the IRC expressing opposition to what Allied perceived as the IRC's abuse of authority under the collective bargaining agreement and requesting the IRC to reconsider Decision 87–200. On or about July 9, 1987, the IRC replied to Allied's request by sending a letter, the pertinent parts of which are reproduced below:

[T]he Council has reviewed all aspects of your original submissions, presentations, briefs, and the subsequent negotiating sessions of the IRC thereon, and has come to the following conclusions and has directed that you be so informed:

1) The parties, in their original submission, did mutually agree to:

"... waive all right to appeal from or to in any way dispute or question the validity of the negotiation agreement reached by the Council or the jurisdiction of the Council in respect thereto ..."

Further, the parties did accept their submission to the Council as "an extension of negotiations between the representatives ..."

Therefore, the Council was an extension of the local bargaining process and *had full authority to proceed on any matter arising out of said negotiations, including the length of the wage contract.*

2) The Council, in establishing through negotiations, a contribution to a new "Special Education Fund" were [sic] fully aware that your original presentation thereon might constitute a fund that

would not meet the test of statutory requirements.

Therefore, the Council negotiated a fund with a different title than that proposed, and when the Decision was delivered, instructed the parties to consult their own legal counsels to endeavor to draft a fund document that would meet the requirements of Section 3.02 of the Taft–Hartley Act or any other legislation that may affect the desired purposes and operation of said fund. Therefore, said fund can only be established if the parties can, in fact, constitute a "legal fund." . . . .

Both parties are reminded that the original submission to the Council contained a contractual commitment "to accept as final and binding the decision which will be handed down by the Council, and to put same into effect as prescribed by the Council."

Complaint Exh. C, *Allied Mechanical Contractors v. IRC*, C–C–87–398–P.

On or about December 22, 1987, Allied notified the Local Unions that the Agreement was to terminate on June 30, 1988. Thereafter, on or about February 1, 1988 the Local Unions advised Allied that it was the Local Unions' position that the Agreement would not expire until June 30, *1989*. To support this interpretation of the Agreement, the Local Unions relied upon Decision 87–200.

## PROCEDURAL BACKGROUND

On August 27, 1987, Allied filed a two-count complaint alleging the IRC had entered invalid and illegal decisions. In the original complaint Allied asked this Court to vacate the IRC's decisions and to tax against Defendants the costs of this action, including reasonable attorney's fees.

On October 28, 1987, pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure, the IRC and the Local Unions filed Motions to Dismiss Allied's complaint. In support of the motions, Defendants filed memoranda of law and the affidavit of Edward R. Teske, who is the Secretary of the IRC.

On December 22, 1987, Allied filed a brief in opposition to Defendants' Motions to Dismiss. In support of the opposing brief, Allied filed the affidavit of W. Paul Smith, who is the Executive Vice President of Allied.

On January 19, 1988, Defendants filed reply memoranda to Allied's opposition brief. In support of the reply memoranda, Defendants offered another affidavit of Edward R. Teske and the affidavits of Charles F. Hiley, Sr. and John E. Joyce, Jr., who are both members of the IRC and participate in IRC proceedings.

On February 25, 1988, Allied filed a four-count First Amended Complaint alleging the IRC's decisions were both invalid and violated the duty of fair representation that the IRC allegedly owed Allied. In addition to the demands first noted in the original complaint, Allied asked this Court to enter a declaratory judgment to the effect that the IRC's decisions on the duration of the agreement and on the "Special Education Fund" are invalid and illegitimate.

Finally, on March 9, 1988 and March 11, 1988 Defendants filed Motions to Dismiss Allied's First Amended Complaint. Defendants have incorporated the legal arguments made in their prior motions and have, in addition, moved to dismiss Allied's claim of breach of duty of fair representation on the ground that it fails to state a claim upon which relief can be granted. These latest motions are now pending before this Court.

## CONTENTIONS OF THE PARTIES

### Allied's Complaint

In the First Amended Complaint, Allied asserts that under Section 301 of the LMRA, 29 U.S.C. § 185, and the federal Declaratory Judgments Act, 28 U.S.C. § 2201, this Court has subject-matter jurisdiction over Allied's claims. Allied alleges it is entitled to have its various claims resolved in federal court because they all involve violations of the collective bargaining agreement. It will be noted here that Allied originally cited the Federal Arbitration Act, 9 U.S.C.A. §§ 1–14 (West 1970 &

Supp.1987), as a basis for jurisdiction, but in the First Amended Complaint Allied has removed any reference to it. Therefore, Allied has made it unnecessary to discuss the parties' arguments concerning the direct applicability of the Federal Arbitration Act since such arguments are moot.

First, Allied alleges that the IRC exceeded its authority under the Agreement when it, in effect, extended the term of the Agreement by establishing a wage and contribution schedule to be applied after the June 30, 1988 termination date. Allied contends that Article XXII, which governs the duration of the Agreement, was not submitted to the IRC for determination, and, therefore, any decisions of the IRC affecting Article XXII would be invalid and illegal. In addition, Allied contends that the IRC's authority flows from Article XXII of the Agreement and is limited by that article, and, therefore, the IRC inappropriately exceeded its authority by rendering a decision that would effectively extend both the Agreement and the IRC's ability to render further decisions.

Second, Allied alleges that the IRC rendered an invalid and illegal decision when it established the "Special Education Fund." According to Allied, neither of the parties submitted the issue of a "Special Education Fund" to the IRC, and, therefore, the IRC exceeded its authority by creating such a fund. In addition, Allied alleges that the "Special Education Fund" may violate federal law, *see* 29 U.S.C. § 186.

Third, Allied contends that the management representatives of the IRC, as second-tier negotiators, breached a duty of fair representation allegedly owed to Allied.

Fourth, and finally, Allied contends that it is entitled to a declaratory judgment determining (1) that the Agreement expires June 30, 1988, (2) that the Special Education Fund is illegal, and (3) that the portion of Decision 87–200 setting a wage and contribution schedule beyond June 30, 1988 has no legal effect.

### Defendants' Motion to Dismiss

Defendants have filed (1) Motions to Dismiss, (2) replies to Allied's response, and (3) Motions to Dismiss that apply the arguments raised in the original Motions to Dismiss to Allied's First Amended Complaint. The arguments Defendants have raised in all of these motions and responses will be consolidated and summarized briefly.

First, as mentioned before, the IRC and the Local Unions both assert that this Court has no subject-matter jurisdiction over Allied's claims. Section 301 of the LMRA has been held to give the federal district courts subject-matter jurisdiction to review both grievance arbitration awards and interest arbitration awards. Defendants, however, have attempted to distinguish the activities of the IRC from the activities of a typical arbitration body. To support this distinction, Defendants have referred this Court to (1) the language of the Agreement, (2) the nature of the IRC's proceedings, (3) legal precedent, and (4) agreements recognizing the IRC as a negotiating body.

According to Defendants the IRC is more like a second-tier negotiation body than an arbitration body because it is not impartial. Four members of the IRC have backgrounds indicating a bias in favor of labor, and four members have backgrounds indicating a bias in favor of management. Defendants assert that these two groups each represent the interests of either the employees or the employers; the members appointed by the contractor associations allegedly represented Allied, and the members appointed by the employee associations allegedly represented the Local Unions. Defendants also assert that the IRC is a negotiating body because it acts only by unanimous agreement of all members.

Defendants have also cited a decision of the National Labor Relations Board, *Mechanical Contractors Ass'n of Newburgh*, 202 N.L.R.B. 1 (1973), which purportedly makes the distinction between a negotiating body and and arbitration body. Defendants rely heavily upon *Newbergh* as precedent that this Court should recognize as controlling on the issue of the IRC's status.

Finally, Defendants note that when the issues were submitted to the IRC for resolution representatives of Allied and the Local Unions signed a document stating the following:

> We hereby waive all right to appeal from or to in any way dispute or question the validity of the *negotiation agreement* reached by the Council or the jurisdiction of the Council in respect thereto. We agree that such *negotiation agreement* may be enforced by any court of competent jurisdiction by injunction or otherwise and that failure to comply with such *negotiation agreement* shall be deemed to be an unfair labor practice under the National Labor Relations Act as a failure to bargain in good faith.

Affidavit of Edward R. Teske, Exh. B, *Allied Mechanical Contractors v. IRC,* C–C–87–398–P (filed Jan. 19, 1988) (emphasis added); *see also* Affidavit of Edward R. Teske, Exh. A (filed Oct. 28, 1987) ("IRC Statement to North Carolina Pipefitter Submitters").

Defendants conclude by stating that they have been unable to find a single case holding that the federal district courts have subject-matter jurisdiction under Section 301 of the LMRA to vacate the results of collective bargaining *negotiations.* Defendants note that the Court of Appeals for the Fourth Circuit has held that Section 301 of the LMRA does not confer upon the district courts jurisdiction over an employer's claim that it was not bound by a collective bargaining agreement, *A.T. Massey Coal Co., Inc. v. International Union, UMWA,* 799 F.2d 142, 145–146 (4th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1964, 95 L.Ed.2d 536 (1987).

Second, the IRC asserts that it is not a proper defendant under Section 301 of the LMRA because it was not a party to the Agreement and Section 301 is limited to suits that allege a violation of contract between an employer and a labor organization. In support of this position, the IRC has cited *Sine v. Local No 992, International Brotherhood of Teamsters,* 730 F.2d 964 (4th Cir.1984).

Third, the IRC asserts that Section 301 of the LMRA does not authorize nationwide extraterritorial service, *see Central Operating Co. v. Utility Workers,* 491 F.2d 245 (4th Cir.1974), and, therefore, service upon the IRC was invalid since it was accomplished in accordance with Rule 4(i)(1)(D) of the Federal Rules of Civil Procedure by mailing a copy of the summons and complaint to the IRC office.

Fourth, Defendants assert that Allied's claim against the IRC for breach of an alleged duty of fair representation must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because it fails to state a claim upon which relief can be granted.

### Allied's Response

Allied in response to Defendants' arguments first asserts that it intended throughout the negotiating process for IRC to act as an "interest arbitrator." *See* Affidavit of W. Paul Smith, *Allied Mechanical Contractors v. IRC,* C–C–87–398–P (filed December 22, 1987) ("Allied has always considered the IRC's role to be that of an interest arbitration panel."). Allied also contends that the IRC handled the submission of Allied and the Local Unions in a way similar to an interest arbitrator. Allied supports this position by noting that the IRC (1) received written submissions from the parties, (2) heard oral arguments, (3) received and considered written briefs, (4) deliberated in private, and (5) rendered a decision. Allied argues that such procedures demonstrate that the IRC was acting in an adjudicative capacity rather than an negotiating capacity. Finally, Allied asserts that the language of the Agreement shows that the parties intended the IRC to act as a second-tier negotiator.

Allied argues in the alternative that even if this Court determines that the IRC acted as a second-level negotiation body, this Court still has subject-matter jurisdiction over Allied's claims since Section 301 of the LMRA is designed to provide a federal judicial forum for suits involving a violation of contracts between an employer and a labor organization. Allied asserts that

there is a contractual dispute with the Local Unions over the effect of Article XXII of the Agreement. Allied contends that the Local Unions have breached Article XXII of the Agreement by taking the position that Allied is bound by an IRC decision that addresses issues which were not submitted to it.

Finally, Allied argues that service process was properly executed on the IRC because North Carolina, the forum state for this Court, has a long-arm statute which authorizes the exercise of in personam jurisdiction upon parties who are engaged in "substantial activity" within the forum. *See* N.C.Gen.Stat. § 1–75.4(1)d (1987).

## APPLICABLE LAW AND ANALYSIS

### I. *Standard of Decision*

The parties have each submitted affidavits along with their pleadings. Rule 12(b)(6) of the Federal Rules of Civil Procedure requires the federal district courts to treat motions dismiss as motions for summary judgment when matters outside the pleadings are presented that are not excluded by the court. This Court is of the opinion that the matters introduced by the parties outside the pleadings are wholly unnecessary to determine the narrow legal questions the Defendants have presented in their Rule 12(b)(6) Motions, and, therefore, such affidavits will be temporarily excluded from this Court's consideration of Defendants' Rule 12(b)(6) motions.

The parties will no doubt note that this Order has referred to exhibits in the affidavits, but such references have been included simply to complete the story. The exhibits themselves will not be considered by this Court in determining whether Allied has stated a valid cause of action for breach of an alleged duty of fair representation. This Court may, of course, consider the exhibits and affidavits when determining the other grounds to dismiss because Rule 12(b) does not require the court to treat all motions to dismiss as summary judgment motions. Only motions to dismiss made pursuant to Rule 12(b)(6) need be treated as summary judgments when

matters outside the pleadings are introduced. *See, e.g., Timberlane Lumber Co. v. Bank of America Nat'l Trust and Savings Ass'n,* 574 F.Supp. 1453, 1461 (N.D. Cal.1983) (when considering matters outside the pleadings, a motion to dismiss for lack of subject-matter jurisdiction is not converted into a motion for summary judgment), *aff'd,* 749 F.2d 1378 (9th Cir.1984), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985). Thus, for the purpose of determining the jurisdictional issues, this Court will consider the affidavits and exhibits. *Id.*

### II. *Subject Matter Jurisdiction Under the Labor Management Relations Act*

Congress enacted the Labor Management and Relations Act, also popularly known as the Taft–Hartley Act, to accomplish two primary purposes: To lessen industrial disputes and to place employers on an equal footing with unions in bargaining and labor relation procedures. 29 U.S.C.A. § 141 (West 1973) ("Congressional declaration of purpose and policy"); *see also* C. Morris, ed. *The Developing Labor Law* 877 (2d ed. 1983) ("Congress sought in Section 301 to add stability to labor relations by providing a means to enforce agreements between unions and employers."). *See generally* 48 Am.Jur.2d *Labor and Labor Relations* §§ 546–547 (1979). "The federal labor laws seek to promote industrial peace and the improvement of wages and working conditions by fostering a system of employee organization and collective bargaining." 48A Am.Jur.2d *Labor and Labor Relations* § 1787, at 244 & n. 8 (1979) (citing *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). Refusals by employers or unions to bargain collectively are, by definition, unfair labor practices. 29 U.S.C.A. §§ 158(a)(5), 158(b)(3) (West 1973).

Collective bargaining is defined as follows:

> For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in

good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession....

29 U.S.C.A. § 158(d) (West Supp.1987). If an employer or employee fails to bargain in good faith on matters concerning wages, hours, and other terms and conditions of employment, such party may be charged with unfair labor practices and brought before the National Labor Relations Board ("the NLRB or the Board").

The NLRB, however, does not have exclusive subject-matter jurisdiction in the labor law matters. Section 301 of the LMRA provides the federal district courts with subject-matter jurisdiction in the labor law area, and it provides, in pertinent part, the following:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C.A. § 185(a) (West 1978 & Supp. 1987). Under this statute parties seeking to pursue their labor disputes in federal district court must allege in their complaints that there has been a breach of contract between an employer and a labor organization representing employees in an industry affecting commerce. *See, e.g., A.T. Massey Coal Co., Inc. v. International Union, UMWA,* 799 F.2d 142, 145–146 (4th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1964, 95 L.Ed.2d 536 (1987).

Section 301, however, is not merely a jurisdictional/procedural statute; it also empowers the federal courts to fashion a body of federal substantive labor law for the enforcement of collective bargaining agreements. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 450–451, 77 S.Ct. 912, 914–15, 1 L.Ed.2d 972 (1957); *see also Winston–Salem Printing Pressmen & Assistants' Union No. 318,* 393 F.2d 221, 225 (4th Cir.1968). The United States Supreme Court has held that federal labor law provides the federal courts with power to specifically enforce arbitration clauses in collective bargaining agreements. *Textile Workers Union v. Lincoln Mills,* 353 U.S. at 450–451, 77 S.Ct. at 914–15. It has also been held that the courts have jurisdiction under Section 301 over suits to vacate arbitration awards. *E.g., Kracoff v. Retail Clerks Local Union No. 1357,* 244 F.Supp. 38, 40 (E.D.Pa.1965). Even "interest" arbitration awards may be enforced in suits premised upon Section 301. *E.g., Sheet Metal Workers Int'l Ass'n Local Union No. 59 v. Employers Ass'n of Roofers and Sheet Metal Workers, Inc.,* 430 F.Supp. 540, 541 n. 3 (D.Del.1977). Yet, a federal court reviewing an arbitration award under Section 301 may not overrule the award "simply because the court believes its own interpretation of the contract would be the better one." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) (applying standard of review established in *Steelworkers v. Enterprise Wheel* but holding that external law and established public policy may be considered); *Steelworkers v. Enterprise Wheel & Car Corp.* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Instead, a federal court can only vacate an arbitration decision if the arbitrator did not draw his authority from the essence of the collective bargaining agreement. *Id. See generally* Heinsz, *Judicial Review of Labor Arbitration Awards:* The Enterprise Wheel *Goes Around and Around,* 52 Mo. L.Rev. 243, 248–288 (1987).

Courts have permitted numerous kinds of suits to be pursued as violations of contracts under Section 301 of the LMRA, including the following:

[S]uits against an employer for wages due because of a lockout violation of the applicable collective bargaining agree-

ment; suits to compel arbitration of such individual grievances as rates of pay, hours of work, and wrongful discharge; suits to obtain specific enforcement of an arbitrator's award ordering reinstatment and backpay to individual employees; suits to recover wage increases in a contest over the validity of the collective bargaining agreement; ... suits for violation of a no-strike the collective bargaining agreement[;] [s]uits for reformation of contract, for specific enforcement, for declaratory relief determining the agreement to be valid and for damages for its breach, for a declaratory judgment that a contractual provision is unenforceable because compliance would be an unfair labor practice[;] ... [s]uits to prevent arbitration on the ground that the dispute is nonarbitarble, the the arbitration clause is invalid, or that there is no contract to arbitrate[;] ... *suits for the enforcement of arbitration awards* [;] suits against an employer by a union to compel the employer to comply with a collective bargaining agreement[;] suits by members of a union against the trustees of a health and welfare trust as to the rights of such members in certain trust reserves[;] suits by trustees of union health and welfare and pension trust funds to recover unpaid contributions allegedly due under the terms of a collective bargaining agreement[;] *and suits to modify, correct, or vacate an arbitration award made in arbitration proceedings pursuant to a collective bargaining agreement....*

48A Am.Jur.2d *Labor and Labor Relations* § 1926, at 336–337 (1979) (footnotes omitted and emphasis added). All of these suits have been permitted under Section 301 because there was the necessary allegation of a breach of the underlying collective bargaining agreement.

Defendants argue that the IRC's decision is neither a grievance arbitration award nor an interest arbitration award. Defendants also assert that they have been unable to find a single case holding there is jurisdiction in a suit premised upon Section 301 of the LMRA over an action seeking to vacate the results of second-tier negotiations. Ac-

cording to Defendants, the IRC's decision is simply the final product of second-tier negotiatons, and, therefore, this court does not have subject-matter jurisdiction over Allied's suit. To support this distinction, Defendants rely upon a decision of the NLRB, *Mechanical Contractors Association of Newburgh,* 202 N.L.R.B. 1 (1973).

This Court has carefully considered *Newburgh* and several other decisions related to the same issues raised in *Newburgh.* Since *Newburgh* was decided, several cases have considered whether there is any difference between an arbitration body and a second-tier negotiatior. *E.g., United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Indus.,* 266 N.L.R.B. 129 (1983); *N.L.R.B. v. Sheet Metal Workers Int'l Ass'n, Local Union No. 38,* 575 F.2d 394 (2d Cir.1978); *Columbus Printing Pressman & Assistants' Union No. 252,* 219 N.L.R.B. 268 (1975), *enforced, NLRB v. Columbus Printing Pressmen & Assistants' Union No. 252,* 543 F.2d 1161 (5th Cir.1976). All of these cases recognize that there may be a distinction between arbitration bodies and second-tier negotiators. This distinction has been considered by the NLRB and the courts in the context of alleged claims of unfair labor practices.

Specifically, the NLRB and the courts have determined that IRC clauses, similar to Article XXII of the Agreement, are not a mandatory subject of collective bargaining because such clauses do not relate to "wages, hours, and other terms and conditions of employment," nor to "the negotiation of an agreement." *United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Indus.,* 266 N.L.R.B. 129 (1983). Instead, IRC clauses are a non-mandatory subject of collective bargaining since such clauses require the parties to substitute another set of negotiators in the event that the original negotiators are unable to reach an agreement. Of course in the case of an employer, the original negotiator is usually handpicked, unlike an IRC representative.

For example, in *United Association of Journeymen and Apprentices of the*

*Plumbing and Pipefitting Industry, Local Union No. 387,* 266 N.L.R.. 129 (1983), the NLRB considered, affirmed, and adopted the findings of fact and conclusions of law of the Administrative Law Judge ("ALJ"), Thomas R. Wilks, who considered employer allegations that the union committed an unfair labor practice by failing and refusing to bargain in good faith with the employer group concerning the inclusion in a succeeding collective-bargaining agreement, then being negotiated, of a provision requiring the submission of all future collective bargaining disputes to the IRC for final and binding resolution. *Id.* at 129. The ALJ concluded that the union had not committed an unfair labor practice by refusing to bargain on the subject of the IRC clause. *Id.* at 133–136. In reaching this conclusion, the ALJ considered both the nature of the duty to bargain and the nature of the IRC.

First, the ALJ noted that Section 8(d) of the National Labor Relations Act imposes an obligation upon employers and employees to bargain on certain subjects, not all subjects. "[T]he parties are free to bargain about any lawful subject, [but] the obligation to bargain does not extend to all subjects, nor to all areas of interest or concern to the parties, nor to all matters upon which agreement may directly or indirectly effectuate industrial peace." *Id.* at 133. The ALJ considered arguments to the effect that the IRC clause should be considered a mandatory subject of bargaining, since it purportedly is designed to function as an integral part of collective bargaining process. The ALJ rejected these arguments, and stated the following:

> [T]he topic of who will serve as the negotiators, i.e., the identity of the negotiators, is a topic that could be defined as an integral part of bargaining comparable to [preliminary] bargaining arrangements. However, the [NLRB] has held that the subject of identity or selection of a party's bargaining negotiator is not a proper subject upon which the parties are compelled to negotiate. Yet the identity of the bargaining representative may well be directly related to the efficacious resolution of disputes over wages, hours,

etc., particulary if the selection of negotiators involves designations of multiemployer committees or persons or committees possessed of vast experience, expertise, and dispute resolving facility.

*Id.* (footnote omitted).

Second, the ALJ continued by comparing IRC clauses to interest arbitration clauses and by noting that the NLRB has consistently held that "interest arbitration, despite its arguable benefits, is not a mandatory subject of bargaining and that neither party can compel the other to negotiate a contract clause that would, in the event of new contract negotiation disagreement, in effect substitute a third party as final decisionmaker of disputed contractual terms." *Id.* (citing several cases including *Greensboro Printing Pressmen and Assistants' Union No. 319 (The Greensboro News Company),* 222 N.L.R.B. 699 (1977), *enforced,* 549 F.2d 308 (4th Cir.1977)). Finally, the ALJ summed up by stating the following:

> [A] second tier of bargaining is not a mandatory subject of bargaining. It is therefore unnecessary to decide whether the IRC clause involves interest arbitration or second level bargaining, for in either case it involves a permissive subject of bargaining. Interest arbitration, if held a mandatory subject of bargaining, would tend to debase the essence of free collective bargaining. So-called second tier bargaining, ... if found to be a mandatory subject of bargaining, would amount to an unreasonable constraint upon not only the right of a party to negotiate through negotiators of its own choice, but also with the party's internal decisional process as to how its bargaining position will be determined and who will determine it.

*Id.* at 135–136.

In the instant case it is also entirely unnecessary to decide whether the IRC functions as an interest arbitrator or as a second-tier negotiator. The distinction is of limited importance in the present case because Allied has alleged that the IRC exceeded its authority by rendering Decision 87–200 and has alleged that the Local

Unions are insisting that the IRC's decision is binding upon Allied. Allied alleges that such insistence is a breach of the collective bargaining agreement. Thus, Allied has met its burden since it has alleged that there is a breach of an existing collective bargaining agreement between the parties. That is enough under Section 301 of the LMRA, *A.T. Massey Coal Co., Inc. v. International Union, UMWA*, 799 F.2d at 146, and, therefore, this Court holds that it has subject-matter jurisdiction over Allied's suit. The same policies which support a finding of subject-matter jurisdiction over suits seeking to vacate interest arbitration awards support a finding that the federal courts have subject-matter jurisdiction to vacate decisions rendered by second-tier negotiators. Simply put, a party to a collective bargaining agreement should have some forum in which to have an IRC decision reviewed, otherwise virtual strangers, the IRC representatives, could bind the party to a decision on issues never submitted to the IRC or to a decision without basis in law or the collective bargaining agreement.

Although this Court is convinced that it has subject-matter jurisdiction to entertain Allied's claims, it is unclear what standard this Court will apply when reviewing the IRC's decision. The parties have not briefed this issue yet, and, therefore, the following comments are offered only to provide them with a starting point. As mentioned before, courts can only vacate an labor arbitration award when the arbitrator's decision fails to draw its essence from the collective bargaining agreement. *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 596, 80 S.Ct. at 1360. The IRC's decision, however, is not clearly an arbitration award. In matters other than arbitration, the Supreme Court has directed the lower courts to apply in Section 301 suits "federal law, *which the courts must fashion from the policy of our national labor laws.*" *Lincoln Mills*, 353 U.S. at 456, 77 S.Ct. at 918 (emphasis added). The Supreme Court has explained how the lower courts should proceed to fashion the substantive federal labor law:

The [LMRA] expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem.

*Id.* at 456–457, 77 S.Ct. at 918. Although, the IRC decision is not clearly an arbitration award, it closely resembles a interest arbitration award. Therefore, the same standard of review that applies in cases involving interest arbitration awards *may* be appropriate in the present case. This Court, however, will consider the parties' arguments on this point at the appropriate time.

### III. The Declaratory Judgments Act

■ Section 2201(a) of Title 28, United States Code, states, in pertinent part, the following:

In a case of actual controversy *within its jurisdiction* ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C.A. § 2201(a) (West Supp.1987) (emphasis added) ("Declaratory Judgments"). Defendants have correctly noted that Section 2201(a) does not provide an independent basis for subject-matter jurisdiction. Section 301 of the LMRA, however, does provide a satisfactory independent basis for subject-matter jurisdiction, and, therefore, this Court will be able to render a declaratory judgment in this case.

### IV. Jurisdiction Over Defendant IRC

■ Although Section 301 of the LMRA provides this Court with subject-matter jurisdiction over Allied's claims, it does not provide jurisdiction over the IRC in this

case. Section 301 clearly states that "[s]uits for violation of contracts *between an employer and a labor organization* ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C.A. § 185(a) (West 1978 & Supp.1987) (emphasis added). Only parties to the collective bargaining agreement can be brought into suits premised upon Section 301 of the LMRA. *E.g., Sine v. Local No 992, Int'l Bhd. of Teamsters,* 730 F.2d 964, 966 (4th Cir.1984) (holding Eastern Conference of Teamsters was not proper party to suit under Section 301 even though conference employers sat on joint committee that considered grievances before arbitration); *Fox v. Mitchell Transp., Inc.,* 506 F.Supp. 1346, 1349 (D.Md.1981) (citing *Teamsters Local Union No. 30 v. Helms Express, Inc.,* 591 F.2d 211, 216–217 (3d Cir.), *cert. denied,* 444 U.S. 837, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979)), *aff'd without opinion,* 671 F.2d 498 (4th Cir.1981). The IRC was not a party to the collective bargaining agreement between Allied and the Local Unions. The IRC may have caused a breach of the agreement, but the IRC cannot be held accountable under Section 301. Since Allied has not provided this Court with information supporting a finding of jurisdiction on some other ground, the IRC's motion to dismiss as to it will be granted.

*V. Duty of Fair Representation*

This Court has carefully considered Allied's claim against the IRC which alleges a breach of a duty of fair representation allegedly owed to Allied by the IRC. This Court has been unable to find a single case holding that a second-tier negotiator owes such a duty to a principal in the context of labor management relations. The duty of fair representation was created by the federal courts, but it only applies to labor organizations, by virtue of their status as the exclusive bargaining representative of individual workers. *E.g., Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *see also Price v. United Autoworkers,* 795 F.2d 1128, 1134 (2d Cir.1986) ("duty of fair representation is con-extensive only with the power of exclusive representation"). Since Allied's claim appears to have no prior precedent in the case law, and since Allied has chosen not to respond to Defendants' arguments concerning the nonapplicability of this legal doctrine to the facts of the present case, such claim will be dismissed for failing to state a claim upon which relief can be granted.

CONCLUSIONS

NOW, THEREFORE, IT IS ORDERED that Defendants' Motions to Dismiss, filed March 9, 1988 and March 11, 1988 are *DENIED IN PART* and *GRANTED IN PART.* Allied's claims against Defendant IRC are dismissed.