799 F.2d 142
 123 L.R.R.M. (BNA) 2476, 55 USLW 2248,
105 Lab.Cas. P 12,035
 A.T. MASSEY COAL COMPANY, INC.; Wyomac Coal Company, Inc.;
Pike County Coal Corporation; Rawl Sales and Processing
Co./Blackberry Creek Coal Company; Winston Coal Company;
Robinson-Phillips Coal Company; Simron Fuel Company, Inc.;
Shannon-Pocahontas Coal Corporation; Royalty Smokeless Coal
Company/Trace Fork Coal Company; Big Bear Mining Company;
Joboner Coal Company; T.C.H. Coal Company; Big Bottom Coal
Company, Inc.; Sprouse Creek Processing Company; Tall
Timber Coal Company; Pikco Mining Company; Rocky Hollow
Coal Co.; M & B Coal Company; Dehue Coal Corporation;
Blue Springs Coal Company; Allburn Coal Company; Pond
Creek Coal Company; P.M. Charles Coal Co., Appellants,
v.
INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, Appellee.
INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA;
District 17, United Mine Workers of America;
United Mine Workers of America, Local
Union No. 1525, Appellees,
v.
A.T. MASSEY COAL COMPANY, INC.; Rawl Sales and Processing
Company/Blackberry Creek Coal Company; Sprouse Creek
Processing Company; Tall Timber Coal Company; Pikco Mining
Company; Rocky Hollow Coal Company; Blue Springs Coal
Company; Allburn Coal Company, Inc.; Pond Creek Mining
Company; P.M. Charles Coal Company; Wyomac Coal Company,
Inc.; Winston Coal Company; Robinson-Phillips Coal
Company; M. & B. Coal Company; Simron Fuel Inc.;
Shannon-Pocahontas Coal Company; Royalty Fork Coal Company;
Big Bear Mining Company; Pike County Coal Corporation;
Joboner Coal Company; TCH Coal Company; Big Bottom Coal
Company, Inc.; Omar Mining Company; and Dehue Coal
Corporation, Appellants.
 Nos. 86-2518(L), 86-3826.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 5, 1986.
Decided Sept. 3, 1986.
 
 Gregory B. Robertson (Paul M. Thompson, Christine H. Perdue, Hunton & Williams, Richmond, Va., Forrest H. Roles, Smith, Heenan & Althen, Charleston, W. Va., on brief) for appellants.
 Judith A. Scott (Michael H. Holland, United Mine Workers of America, Christopher L. Varner, Washington, D.C., Grant Crandall, Crandall, Pyles & Crandall, James M. Haviland; McIntyre, Haviland & Jordan, Charleston, W. Va., on brief) for appellees.
 Before WIDENER, HALL, and MURNAGHAN, Circuit Judges.
 MURNAGHAN, Circuit Judge:
 
 
 1
 A.T. Massey Coal Company and a number of other corporations affiliated with Massey have appealed a grant at the behest of International Union, United Mineworkers of America, et al., of an injunction by the United States District Court for the Southern District of West Virginia, directing Massey and its affiliates to arbitrate pursuant to the terms of an expired National Bituminous Coal Wage Agreement ("NBCWA"). The order was entered following a decision by the United States District Court for the Eastern District of Virginia in a related proceeding initiated by Massey and its affiliates that it lacked subject matter jurisdiction to consider the substantive issue. The two cases have been consolidated for appeal purposes.
 
 
 2
 Functioning as a single production entity with sales, transportation and distribution coordinated from Massey's Richmond headquarters, Massey and its affiliated companies have at times allowed the Bituminous Coal Operators Association ("BCOA") to represent them in collective bargaining. With respect to the 1981 NBCWA, some of the Massey companies thereby became bound. Other operating companies signed the agreement individually. The 1981 NBCWA was terminated by the union, the United Mine Workers of America ("UMWA"), effective September 30, 1984. Prior to that date, all of the Massey companies, with the single exception of Omar Mining Company, had withdrawn from the BCOA. All those who had withdrawn rejected a union request that they become signatories to the as yet unnegotiated successor contract to the 1981 NBCWA.
 
 
 3
 A 1984 NBCWA was negotiated and became effective October 1, 1984. The absence of an agreement covering companies not in the BCOA, i.e., all Massey's affiliated companies, excepting Omar, led the union promptly to strike as to them on October 1, 1984.
 
 
 4
 On November 1, 1984, the union filed an unfair labor practice charge against Massey and its affiliated companies on the grounds that, as a common, or single, employer, they were all bound by Omar's acceptance of the 1984 NBCWA negotiated by the BCOA. The unfair labor charge asserts that it is wrong for each of the companies which had withdrawn from the BCOA prior to October 1, 1984 to attempt to bargain separately for a new contract. Another unfair labor practice charge has been filed claiming "surface bargaining with a view to avoiding an agreement" in violation of the National Labor Relations Act ("NLRA" or "the Act"). The charge is still pending.[1]
 
 
 5
 The single employer charges which had been filed were disposed of by a December 20, 1985 agreement providing that "A.T. Massey Coal Company, Inc. will sign any collective bargaining contract[s] negotiated which embodied terms and conditions of employment to which it agreed." The agreement further provided:
 
 
 6
 Further, it is understood and agreed that if the charged parties and charging party agree during negotiations that any contract[s] negotiated and embodying agreed upon terms and conditions of employment shall be signed only by the operating companies set forth in Attachment B, in that event, A.T. Massey Coal Company, Inc. will not be obligated to sign the contract[s].
 
 
 7
 Through that agreement the strike was terminated with the union agreeing that its members should return to work. However, the UMWA then asserted that despite the fact that the agreement covered only future contracts with the union the individual employers had been bound all along by the 1984 NBCWA, although they had withdrawn from the BCOA, because of their relationship to Omar and, in turn, Omar's linkage with the BCOA. On that theory, the UMWA has sought to hold Massey and each subsidiary or affiliate to the 1984 NBCWA terms. The question of whether the negotiation conducted on Omar's behalf bound Massey and its affiliates to the 1984 NBCWA has obviously loomed large in the minds of the parties in the present consolidated actions. Massey's attempt to obtain declaratory relief in an action initiated on December 2, 1985 in the United States District Court for the Eastern District of Virginia foundered on the ruling of the district court that it lacked subject matter jurisdiction.[2] 2] That ruling is on appeal and is one of the consolidated cases to be resolved by us. Contemporaneously, Massey also filed a complaint with the National Labor Relations Board.
 
 
 8
 On January 2, 1986, the other case productive of an appeal in the consolidated proceeding before us was filed in the Southern District of West Virginia. The union there sought a declaratory judgment that the 1984 NBCWA was binding on the Massey companies, as well as a preliminary injunction requiring that the companies be deemed to have joined in a grievance the UMWA had filed against Omar on the basis that all Massey companies were bound by the 1984 NBCWA.
 
 
 9
 The district court, following extensive introduction of evidence, made findings that:
 
 
 10
 1) The several employers involved were wholly-owned subsidiaries of Massey;
 
 
 11
 2) The 1984 NBCWA language making operation of all coal lands and preparation facilities owned or held under lease by any party, or by any subsidiary or affiliate subject to the terms thereof, on the basis of Omar's clearly being a party, rendered all the other Massey companies parties as well;
 
 
 12
 3) The arbitration provision of the 1984 NBCWA, therefore, applied to each of the Massey companies;
 
 
 13
 4) Massey had refused to arbitrate grievances submitted under the 1984 NBCWA;
 
 
 14
 5) Massey supervises day to day matters of its subsidiaries and dictates union negotiating procedures, though it and the subsidiaries portray themselves as negotiating individually; and
 
 
 15
 6) The union and associated plaintiffs have suffered or will suffer irreparable injury because of the defendants' refusal to arbitrate.
 
 
 16
 On the basis of those findings, the district judge concluded that the arbitration proceedings clearly bound Omar and that "whether or not the defendant companies are 'subsidiaries or affiliates' of Omar within the meaning of Article I(A)(f)[3] ... is a matter which can only be determined under the grievance and arbitration procedure of the 1984 [NBCWA]." The court further concluded that the single employer status applicable to Massey and Omar made it appropriate to require Massey to arbitrate the grievance according to the 1984 NBCWA. The court also applied the criteria in Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir.1977) and determined it was appropriate to issue the preliminary injunction, whose validity now is before us on appeal.
 
 
 17
 As a preliminary matter we address Massey's appeal from the order entered by the United States District Court for the Eastern District of Virginia that it lacked subject matter jurisdiction under Sec. 301 of the LMRA to issue a declaratory judgment to the effect that Massey and its affiliated companies (excepting Omar) were not party to the NBCWA of 1984 and the December 23, 1985 collective bargaining agreement. The district court relied on the plain language of Sec. 301 which states that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an undertaking affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties...." 29 U.S.C. Sec. 185 (emphasis provided).
 
 
 18
 The district court, relying as well on the only cases which have considered the precise issue of whether there is jurisdiction under Sec. 301 as to the threshold question of whether there was a valid contract or collective bargaining agreement which would give the district court jurisdiction, ruled that the Act affords no such jurisdiction in the case of a declaratory judgment brought to show that there was no contract to which the companies were bound. See NKD Corp. v. Local 1550 of United Food & Commercial Workers Intl. Union, 709 F.2d 491, 493 (7th Cir.1983); Hernandez v. National Packing Co., 455 F.2d 1252, 1253 (1st Cir.1972); John S. Griffith Construction Co. v. Southern California Cement Masons, 607 F.Supp. 809, 812 (C.D.Cal.1984).
 
 
 19
 We agree with the district court and hold that a plaintiff must allege breach of an existing collective bargaining contract in order to avail itself of jurisdiction under Sec. 301 of the Act. Since Massey sought a declaration that it was not bound by the 1984 NBCWA or the December 23, 1985 collective bargaining agreement, it did not bring itself under the explicit jurisdictional language of the Act. The later suit brought by the union in the West Virginia district court has no such jurisdictional infirmity since it seeks a declaration that Massey and its affiliated companies were bound by the 1984 NBCWA, an admittedly existing agreement. We proceed to consider the appeal of Massey from the order granted by that court requiring it and its affiliated companies to submit to arbitration under the 1984 NBCWA.
 
 
 20
 The disposition by the West Virginia district court seems to us to have omitted one significant and, to some extent at least, dispositive issue. In AT & T Technologies, Inc. v. Communications Workers of America, et al., --- U.S. ---, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court, relying on United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), emphasized that an obligation to arbitrate is a matter of contract and the existence of such a contract must be established before an arbitration can occur. The Court went on to say that whether there is a contract to arbitrate "is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." In deferring to the arbitrator, the West Virginia district court overlooked the necessity of deciding the judicial question of whether agreement to arbitrate had, in fact, taken place. The grant of the preliminary injunction is, therefore, vacated.
 
 
 21
 The question then arises whether the case should be remanded for a determination of the question or whether, in the peculiar circumstances of the case as it has appeared before us, the question is purely one of law which it is appropriate for us to address and decide. Scarborough v. Ridgeway, 726 F.2d 132, 135 (4th Cir.1984); MacMullen v. South Carolina Electric & Gas Co., 312 F.2d 662, 670 (4th Cir.1963), cert. denied, 373 U.S. 912, 83 S.Ct. 1302, 10 L.Ed.2d 413 (1963). At oral argument, counsel for Massey argued that the question presented no disputed issue of fact and was ripe for resolution in the court of appeals. The union through its counsel agreed.[4]
 
 
 22
 Proceeding on that basis, we are satisfied that an agreement to arbitrate on behalf of Massey has not been established. The union seeks to rely on the "single employer" doctrine developed under the NLRA. The determination that Massey is the parent company and that it and its subsidiaries are a "single employer" does not settle the issue of whether Massey and its subsidiaries, other than Omar, have agreed to arbitrate. Indeed, it is inconsistent to conclude that all the subsidiaries of Massey are merely puppets, for it then would be strange for one of them to remain in the BCOA while all the others opted out. Ordinary agency principles rather than a doctrine developed by the NLRB for other, if related, purposes control the question of whether Omar was empowered to act as an agent authorized to bind its parent and affiliates to an agreement to arbitrate. Our review of the record discloses no evidence to support a conclusion that Omar had so bound the others. Accordingly, we rule that there is no obligation on the part of Massey and its affiliates, other than Omar, to negotiate as a consequence of the provisions of the 1984 NBCWA.
 
 
 23
 AFFIRMED IN PART; REVERSED IN PART.
 
 
 24
 K.K. HALL, Circuit Judge, concurring in part and dissenting in part:
 
 
 25
 I agree with the majority's conclusion that the district court lacked jurisdiction in the Virginia case. With respect to the West Virginia case, I also concur in the majority's opinion insofar as it holds that the district court--not the arbitrator--must determine whether Massey and the union are bound by the 1984 NBCWA contract due to the signature of Omar, one of Massey's subsidiaries. Finally, I concur in the majority's decision to vacate the preliminary injunction.
 
 
 26
 I cannot agree, however, with the majority's determination to reach the ultimate issue and to hold that an agreement to arbitrate on behalf of Massey has not been established. In my view, the majority, in deciding this question, has usurped a function which rightfully belongs to the district court in the first instance. Clearly, the district court is in the best position to resolve this question not only because of its role as fact finder, but also because the case proceeded below on a request for a preliminary injunction and the district court may find it necessary to admit additional evidence before reaching a final decision on the merits.[1]
 
 
 27
 Because the district court has not yet had an opportunity to address the question of whether Massey is bound by the contract, I would remand this case to the district court for further proceedings to decide this issue.
 
 
 
 [1]
 The "single employer" doctrine derives from the NLRA's definition of "employer" and allows the National Labor Relations Board ("NLRB") to treat associated or affiliated employers as a single entity, or "single employer" for various purposes under the Act, such as the Act's secondary boycott provisions, or to impose a duty to bargain collectively with employees of a closely affiliated employer. See 2 C. Morris, ed. The Developing Labor Law 1440-42 (2d ed. 1983)
 
 
 [2]
 The rationale employed was that Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, which affords jurisdiction for suits "for violation of [collective bargaining agreements]", affords no jurisdiction in an action for a declaration that there is no such collective bargaining agreement in effect
 
 
 [3]
 Article I(A)(f) of the NBCWA specifies in part that "As part of the consideration for this Agreement, the Employers agree that this Agreement covers the operation of all the coal lands, coal producing and coal preparation facilities owned or held under lease by them, or any of them, or by any subsidiary or affiliate at the date of this Agreement.... (Emphasis provided)
 
 
 [4]
 Assailed with second thoughts, the union has, post-argument, communicated with the court its desire to have the matter remanded for a determination by the district court. However, our review of the record satisfies us that there is no issue of disputed fact presented. By proceeding to decide the question, we will avoid delay with respect to a matter which obviously is apt to reappear at a later date
 
 
 [1]
 Despite the union's representation at oral argument that the record was complete, the union clearly stated in its post-argument memorandum that it had made that representation concerning the preliminary injunction phase only. Moreover, the union pointed out that on the merits it would offer the following pertinent evidence on remand: (1) evidence as to the 1984 bargaining involving Omar and the Bituminous Coal Operators' Association (BCOA), (2) the bargaining history of 1A(f), (3) additional background to arbitration authorities applying and interpreting 1A(f), and (4) other evidence it could gather prior to trial on the interrelationship of the Massey subsidiaries, in particular the interrelationship of Omar and A.T. Massey