John J. MESSINGER, in his representative capacity as Business Manager of Local Union No. 14–14B of the International Union of Operating Engineers, AFL–CIO, and Local Union of Operating Engineers, AFL–CIO, Plaintiffs,

v.

BUILDING CONTRACTORS ASSOCIATION, INC., Defendant.

No. 88 Civ. 4962 (MBM).

United States District Court, S.D. New York.

Jan. 25, 1989.

Stanley Q. Casey, Kennedy & Casey, P.C., Garden City, N.Y., for plaintiffs.

Frederick D. Braid, Alan C. Becker, Rains & Pogrebin, P.C., Mineola, N.Y., for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiffs, John Messinger and Local 14, International Union of Operating Engineers, AFL–CIO, ("Local 14"), filed this declaratory judgment action pursuant to 28 U.S.C. §§ 2201, 2202 (1982) and the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982), asking this court to decide the continuing validity of a collective bargaining agreement with defendant Building Contractors Association, Inc. ("BCA"). Defendant moves for judgment on the pleadings or summary judgment dismissing this action. For the reasons set forth below, I find that this action should be stayed.

## I.

The facts are straightforward and, to the extent relevant, uncontested. Defendant is an employer association which negotiates on behalf of general construction contractors in the New York metropolitan area. (O'Brien Aff. at ¶ 2, 3) Local 14 represents operating engineers employed on construction projects. In June 1987, the parties met five times to negotiate a new contract. Both sides vigorously dispute the intended length of the contract. (O'Brien Aff. at ¶ 7; Messinger Aff. at ¶ 10) Local 14 contends that the agreement reached in June 1987 expired June 1988; BCA asserts that the parties agreed to a three-year contract.

In accordance with his interpretation of the agreement, Local 14's business manager, John Messinger, sent a letter to BCA on May 17, 1988, requesting negotiations for a new contract. (Def.'s Exh. C) BCA's Managing Director, Joseph Fater, responded that the parties had agreed on a three-year contract. Fater sent Messinger a written contract with a three-year provision, which Messinger refused to sign. (Def.'s Exh. E) To date, the parties have not signed a contract. (Messinger Aff. at ¶ 10)

On June 24, 1988, BCA filed unfair labor practice charges with the National Labor Relations Board (NLRB) against Local 14 alleging that Local 14 refused to execute the three-year agreement. (Def.'s Exh. F) Four weeks later plaintiffs filed this lawsuit seeking a declaratory judgment that the agreement reached in 1987 was a one-year contract. On August 8, 1988, the NLRB issued a complaint against Local 14 for violations of §§ 8(b)(3) and 8(d) of the National Labor Relations Act, 29 U.S.C. §§ 158(b)(3) and 158(d) (1982) (NLRA), for failure to execute an agreement. (Def.'s Exh. H) An NLRB administrative law judge conducted a trial November 14–16; the case is now *sub judice* before him.

## II.

Defendant first argues that this court lacks subject-matter jurisdiction because § 301(a) is limited to violations of a collective bargaining agreement and may

not reach disputes, like the one at hand, concerning the existence or continued validity of a contract. Second, defendant contends that, even if this court has jurisdiction, it should defer to the NLRB, which has already held a full trial on the same issue.

Section 301(a) provides that "suits for violation of contracts" may be brought in federal court. Although two circuits construe the statute literally and require a plaintiff to allege a "violation" of a contract, *see, e.g., A.T. Massey Coal Co. v. Int'l Union, UMW,* 799 F.2d 142, 146 (4th Cir.1986), *cert. denied,* 481 U.S. 1033, 107 S.Ct.1964, 95 L.Ed.2d 536 (1987); *Hernandez v. Nat'l Packing Co.,* 455 F.2d 1252, 1253 (1st Cir.1972), most have held that § 301(a) extends to controversies over the existence or validity of an agreement. *Mack Trucks, Inc. v. Int'l Union, UAW,* 856 F.2d 579 (3d Cir.1988); *Rozay's Transfer v. Local Freight Drivers, Local 208,* 850 F.2d 1321, 1326 (9th Cir.1988); *McNally Pittsburg, Inc. v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers,* 812 F.2d 615, 617–19 (10th Cir.1987); *Bd. of Trustees v. Universal Enterprises, Inc.,* 751 F.2d 1177, 1184 (11th Cir.1985); *United Steelworkers of Amer. v. Rome Indus., Inc.,* 437 F.2d 881, 882–83 (5th Cir.1970).

Indeed, the Seventh Circuit recently overruled prior precedent limiting § 301 to alleged violations of a contract, *NDK Corp. v. Local 1550 of United Food & Commercial Workers Int'l Union,* 709 F.2d 491 (7th Cir.1983), and held that § 301 encompasses disputes over the existence or validity of a contract. *Int'l Bhd of Elec. Workers, Local 481 v. Sign–Craft, Inc.,* 864 F.2d 499, 502 (7th Cir.1988).

In determining that § 301 should be read broadly, the *Mack Trucks* panel thoroughly analyzed legislative history and Supreme Court precedent. I find the Third Circuit's view compelling and adopt it. In *Smith v. Evening News Ass'n,* 371 U.S. 195, 199, 83 S.Ct. 267, 269, 9 L.Ed.2d 246 (1968), the Supreme Court stated that "§ 301 is not to be given a narrow reading." Rather, § 301 "authorizes federal courts to fashion a body of federal law for the enforcement of

... collective bargaining agreements." *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). The Second Circuit has similarly endorsed a broad interpretation of § 301. In *Black–Clawson Co., Inc. v. Int'l Ass'n of Machinists Lodge 355,* 313 F.2d 179, 181–82 (2d Cir.1962), the court rejected the view that § 301 "does not countenance an action by a party to a collective bargaining agreement who asserts that he has in fact adhered to the terms of the agreement and who fails to allege its 'violation' by the opposing party" and instead determined that § 301 should be read "expansively." *Black–Clawson* involved a declaratory judgment action brought by an employer to determine whether an employee's grievance was arbitrable where the contract granted only the union the right to demand arbitration. The union counterclaimed that the company had violated the contract by refusing to proceed to arbitration. *Black–Clawson,* 313 F.2d at 182. The court held that jurisdiction was proper even in the absence of a claimed violation of the contract by plaintiff. Although *Black–Clawson* did not reach the precise issue of whether § 301 covers disputes concerning the existence of a contract, its mandate that courts read § 301 "expansively" supports the result here.

Moreover, as a practical matter, limiting § 301 suits to "violations" of a contract "rests too heavily on the mere labeling of the complaint." *Sign–Craft,* at 502. Usually one side claims the other violated the contract; that party then counters that no agreement exists or that the contract is not valid or no longer in force. Restricting § 301 to complaints which allege a contract violation has led to anomalous and inconsistent results. *See, e.g., A.T. Massey,* 799 F.2d 146 (consolidated appeal in which court held that district court had no jurisdiction to consider an employer's claim that it was not bound by an agreement because no contract existed, but second court could consider the union's claim that the employer was bound by the *same* agreement and thus had violated various provisions). Whether the court hears the lawsuit should not turn on which side gets to the court-

house first. Although defendant here has not explicitly claimed that plaintiffs violated the contract, certainly plaintiffs' demands to renegotiate the contract's provisions would violate the contract if the agreement were found still ongoing as defendant maintains. *See Mack Trucks*, 856 F.2d at 584 (plaintiff claimed union "violated the new agreement by repudiation") Accordingly, I find that this court has subject-matter jurisdiction over this lawsuit, even though plaintiffs have not alleged a contract violation by defendant.[1]

 Defendant argues further that jurisdiction is nevertheless improper because the issue here is more properly in the NLRB's exclusive domain. Under the preemption doctrine in labor law, state and federal courts must defer to the primary jurisdiction of the NLRB if a matter is arguably subject to § 7 or § 8 of the NLRA. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244–45, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). However, Congress carved out an exception to the NLRB's exclusive jurisdiction in § 301, by granting district courts concurrent jurisdiction over activity which also constitutes a breach of a collective bargaining agreement. *See William E. Arnold Co. v. Carpenters Dist. Council*, 417 U.S. 12, 16, 94 S.Ct. 2069, 2072, 40 L.Ed.2d 620 (1974); *NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 30 n. 7, 87 S.Ct. 1792, 1796 n. 7, 18 L.Ed.2d 1027 (1967); *Smith*, 371 U.S. at 197, 83 S.Ct. at 269. Contrary to defendant's assertions, this case does not involve solely a failure to execute an agreement. The real disagreement is over the contents of the contract—specifically, whether the agreement is for one or three years. The threshold issue is the continuing validity of the agreement. Thus, for example, if the contract is still valid, plaintiffs would have breached it by seeking to renegotiate its provisions and refusing to accept its continuing validity. Execution of the agreement, rather than being the sole concern, is only one of the issues at stake here.

The Third Circuit in *Mack Trucks*, 856 F.2d at 586, was presented with analogous facts and reached the same conclusion. In *Mack Trucks*, the employer filed a declaratory judgment action to uphold an agreement which the union refused to execute as a written contract. Dismissing the union's contention that the action was within the NLRB's exclusive jurisdiction, the court noted that the fundamental dispute did not concern merely the failure to sign an agreement, but, rather, the very "validity" of the contract. *Mack Trucks*, 856 F.2d at 586. Similarly, here, the issue turns on whether a valid agreement is still in force and thus whether plaintiffs have breached it by attempting to renegotiate various provisions. Indeed, defendant recognizes the contract's continuing validity as the crucial question in this case. *See* Memorandum in Support of Defendant's Motion for Judgment on the Pleadings and/or Summary Judgment at 9. Accordingly, this court has concurrent jurisdiction with the NLRB over this matter.

 However, a finding of jurisdiction does not necessarily require this lawsuit to proceed. To the contrary, the procedural history of this case warrants deference to the NLRB. Four weeks before this lawsuit was filed, BCA filed unfair labor practice charges with the NLRB. The NLRB issued unfair labor practice charges against plaintiffs on August 8, 1988. An administrative law judge held hearings in mid-November on this very same issue and a decision is pending. Allowing this lawsuit to proceed would duplicate effort and waste judicial resources, especially since any NLRB decision will have preclusive effect here. *See, e.g., Carey v. General Electric Co.*, 315 F.2d 499, 511 n. 12 (2d Cir.1963) ("[I]t is not at all inconsistent for a court to defer its judgment should the Board already be seised of jurisdiction over a complaint by one of the parties to the contract."), *cert. denied*, 377 U.S. 908, 84 S.Ct. 1162, 12 L.Ed.2d 179 (1964); *Moshlak v. American Broadcasting Co.*, 423 F.Supp. 774, 776 (S.D.N.Y.1976); *Int'l Bhd of Boilermakers v. Combustion Engineering*,

---

1. Thus, I do not need to consider plaintiffs' request to amend the complaint to allege specific violations of the contract. (Casey Affirmation at 2)

*Inc.*, 337 F.Supp. 1349, 1351–52 (D.Conn. 1971).

Defendant urges dismissal of this lawsuit. However, a stay is preferable to outright dismissal. *See Northern California Dist. Council of Hod Carriers, Bldg. and Constr. Laborers v. Opinski*, 673 F.2d 1074, 1076 (9th Cir.1982) (Kennedy, J.) ("Where a court suspends proceedings in order to give preliminary deference to an independent adjudicating body but further judicial proceedings are contemplated, then jurisdiction should be retained by a stay of proceedings, not relinquished by a dismissal.") As with abstention cases in which a federal court defers to pending state action on the same issue, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed. 2d 483 (1976), dismissal creates a risk that the union might be time-barred from reinstituting the lawsuit if the NLRB fails to render a final decision on the merits. *Cf. Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 698 (7th Cir.1985) (enumerating reasons for staying rather than dismissing *Colorado River* abstention cases). A stay also satisfies plaintiffs' concern that dismissal would prevent the victor at the NLRB from seeking damages for contract breach—relief which only a federal court may grant.

Accordingly, this action is stayed and placed on the suspense docket pending further order of the court.

SO ORDERED.