**ROCK–TENN COMPANY, Plaintiff,**

v.

**UNITED PAPERWORKERS INTERNATIONAL UNION, AFL–CIO, LOCAL 1014, Defendant.**

**Civil Action No. 97–0029–L.**

United States District Court,
W.D. Virginia,
Lynchburg Division.

June 18, 1998.

David B. Carson, Johnson, Ayers & Matthews, Roanoke, VA, Larry E. Forrester, Robert N. Godfrey, Scott C. Casey, Smith, Currie & Hancock, Atlanta, GA, for Plaintiff.

James Joseph Vergara, Jr., Vergara & Associates, Hopewell, VA, for Defendant.

## MEMORANDUM OPINION

WILSON, Chief Judge.

This is an action by plaintiff, Rock–Tenn Company ("Rock–Tenn"), against defendant, United Paperworkers International Union, AFL–CIO, Local 1014 ("Local 1014") under § 301 of the Labor–Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, seeking, essentially, a declaratory judgment that Rock–Tenn is not a party to a collective bargaining agreement. Local 1014 has counterclaimed under § 301 to enforce an arbitrator's award for lost wages and the return of jobs to Rock–Tenn's Lynchburg, Virginia mill. The court dismisses Rock–Tenn's complaint for lack of jurisdiction, retains jurisdiction over Local 1014's counterclaim, and denies enforcement of the arbitrator's award because that award does not draw its essence from the collective bargaining agreement.

### I.

Rock–Tenn manufactures recycled paperboard at its Lynchburg mill ("Lynchburg Mill") and laminated recycled paperboard products at its Lynchburg converting facility ("Lynchburg Converting"). Until January, 1995, when it reorganized its business, Rock–Tenn operated the two facilities as a single entity with a single bargaining unit—Local 1014. Since the reorganization, Rock–Tenn has operated the facilities as independent units "for all business purposes such as accounting and management and considered them separate profit centers." (Arbitrator's Opinion and Award). Concurrent with the reorganization, Rock–Tenn and Local 1014 agreed to divide the labor force into two separate bargaining units, one at each facility. Lynchburg Mill's bargaining unit retained the Local 1014 designation and Lynchburg Converting's bargaining unit became Local 433. Each local has its own separate collective bargaining agreement. Local 1014's agreement expressly provides that it is "by and between Rock–Tenn Company, Lynchburg Mill" and 1014. Local 433's agreement expressly provides that it is "by and between Rock–Tenn Company, Lynchburg Converting" and 433.

Under the earlier collective bargaining agreement, members of the single bargaining

unit performed the functions of "trailer shifting, handling LP gas and the removal of trash" at the two facilities. After the reorganization and creation of separate locals, members of Local 1014 continued to perform those functions at both facilities, and Lynchburg Converting paid Lynchburg Mill an hourly rate to perform the work at Lynchburg Converting. As a cost-cutting measure, however, on October 30, 1995, Lynchburg Converting contracted with an outside source to perform the work at Lynchburg Converting. As a result, Local 1014 filed a grievance alleging that, by contracting with an outside source, Rock–Tenn had violated the "Labor Agreement, past practice and past grievance settlements." Rock–Tenn responded that Lynchburg Mill and Lynchburg Converting had "separate locals with separate bargaining agreements," that Lynchburg Converting not Lynchburg Mill had contracted with the outside contractor, and that the work still was being performed at Lynchburg Mill by Lynchburg Mill's bargaining unit employees with no reductions in force or layoffs.

Local 1014 took the grievance to arbitration. In arbitration, Lynchburg Mill contended that it "did not create the circumstances giving rise to [the] grievance and [was] without power or authority to change them." The arbitrator concluded, however, that the fact that the management of Lynchburg Converting rather than Lynchburg Mill had contracted out the work at Lynchburg Converting was immaterial, because Rock–Tenn, not its divisions, was the employer. He then found, based on earlier collective bargaining history and the resolution of earlier grievances, that Rock–Tenn had violated the collective bargaining agreement when it contracted with an outside source to perform work at Lynchburg Converting. To remedy the perceived violation he directed Rock–Tenn to return the work to "the appropriate

classifications at the Mill" and to pay the grievants "straight time rates for all hours worked by the contractors to whom the work was given."

## II.

■■■ As a preliminary matter, the court dismisses Rock–Tenn's complaint under § 301 of the LMRA seeking a declaratory judgment that it is not bound by the collective bargaining agreement. "[A] plaintiff must allege breach of an existing collective bargaining contract in order to avail itself of jurisdiction under § 301 of the Act." *A.T. Massey Coal Co. v. International Union, United Mine Workers of America,* 799 F.2d 142, 146 (4th Cir.1986). Because Rock–Tenn seeks a declaration that it is not bound by the collective bargaining agreement, "it did not bring itself under the explicit jurisdictional language of the Act." *Id.*[1] This dismissal, however, has no effect on Local 1014's counterclaim, which is independently based on § 301.

## III.

■■■ A federal court's review under § 301 of an arbitrator's award is extremely limited. In fact, "judicial review of an arbitration award is 'among the narrowest known to the law.'" *Richmond, Fredericksburg & Potomac R.R. v. Transportation Communications International Union,* 973 F.2d 276, 278 (4th Cir.1992) (quoting *Union Pac. R.R. v. Sheehan,* 439 U.S. 89, 91, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978)). The court must enforce an award unless the award fails to "draw its essence" from the collective bargaining agreement. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). If an agreement commits a dispute to arbitration, the court must enforce the arbitrator's award

---

1. The court acknowledges that dicta in the Supreme Court's recent decision in *Textron Lycoming Reciprocating Engine Div. v. UAW,* —— U.S. ——, 118 S.Ct. 1626, 140 L.Ed.2d 863 (1998) could be read to indicate that Rock–Tenn could seek a declaratory judgment in this instance. See *Textron,* —— U.S. at ——, 118 S.Ct. at 1629 ("[A] declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid.")

Whether this language would encompass a suit by a party seeking a declaratory judgment that it is not a party to a collective bargaining agreement is unclear. Even if Rock–Tenn could pursue such an action, however, the court's resolution of the case would remain the same whether it addressed the matter pursuant to Rock–Tenn's complaint or, as it has below, Local 1014's counterclaim.

even if it appears to be wrong, because the parties bargained for the arbitrator's interpretation rather than the court's. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Because the right to compel arbitration is contractual, however, only a party that has agreed to arbitrate can be required to arbitrate, and whether it has so agreed is a matter of contract interpretation for the court, not the arbitrator. *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Marrowbone Dev. Co. v. District 17, United Mine Workers*, 147 F.3d 296, 299 (4th Cir.1998); *Local Union No. 637, Internat'l Bhd. of Elec. Workers v. Davis H. Elliot Co.*, 13 F.3d 129, 132 (4th Cir.1993). It follows that only the parties to the agreement are bound, and the determination of who those parties are is for the court. *See Marrowbone*, 147 F.3d 296, 299 ("[T]he court decides, as [an] issue[ ] of contract law, the threshold question[ ] of whether a party is contractually bound to arbitrate. . . ."). The court, in making that determination here, concludes that Lynchburg Mill, rather than Rock–Tenn, was Local 1014's employer under Local 1014's collective bargaining agreement. Furthermore, the court finds that the parties unequivocally agreed to treat Lynchburg Mill and Lynchburg Converting as separate employers; that Local 1014's collective bargaining agreement was intended to cover only grievances concerning classified work at Lynchburg Mill; and that, because the subject of the grievance arose at Lynchburg Converting, Local 1014 was not the proper bargaining unit to challenge Lynchburg Converting's decision.

■ The issue presently before the court is a simple one of contract construction:

whether Rock–Tenn is Local 1014's employer under Local 1014's collective bargaining agreement.[2] Looking to the express language of the collective bargaining agreement and the context in which that agreement arose, the court concludes that it is not.

Lynchburg Mill and Lynchburg Converting each have their own bargaining units with their own separate collective bargaining agreements. It would the wholly inconsistent for the parties to agree to divide Rock–Tenn into separate bargaining units with separate bargaining agreements and, nevertheless, subject it to the competing grievances of locals 1014 and 433. More directly, Local 1014's agreement expressly provides that it is "by and between Rock–Tenn Company, Lynchburg Mill" and 1014, and Local 433's agreement expressly provides that it is "by and between Rock–Tenn Company, Lynchburg Converting" and 433. This language of Local 1014's agreement also indicates that the agreement was intended to cover only grievances concerning classified work at Lynchburg Mill. Local 1014, therefore, was the wrong bargaining unit to pursue a grievance concerning classified work that had been performed at Lynchburg Converting. Essentially in this case, the wrong bargaining unit pursued the grievance against the wrong "employer." The court, accordingly, declines to enforce the arbitrator's award.

Relying mainly on *Richmond, Fredericksburg & Potomac R.R. v. Transportation Communications Int'l Union*, 973 F.2d 276 (4th Cir.1992), Local 1014 argues that Rock–Tenn submitted to the arbitrator's jurisdiction without objection and, therefore, waived its right to claim that he exceeded his authority. The court disagrees. Under the collective bargaining agreement, the "the company"—the employer—is "Rock–Tenn

---

**2.** Separate divisions of a single corporate entity may constitute separate employers under the National Labor Relations Act. *See American Fed'n of Television and Radio Artists v. NLRB*, 462 F.2d 887, 888–90 (D.C.Cir.1972). For example, one division of a corporation may be a "person" separate from a second division of the corporation, and thus be entitled to protection against secondary boycotts, if the first division is in fact an autonomous and unoffending entity in relation to a labor dispute involving the second division. *Id.* at 889–90. However, courts, in deter-

mining under § 301 whether a corporation is bound by the acts of related entities, do not apply the single or multiple employer principles of the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, but rather apply "ordinary agency principles." *A.T. Massey Coal Co.*, 799 F.2d at 147. As outlined above, however, the issue before this court is not whether Rock–Tenn is bound by the agreements of its unincorporated divisions, but rather whether Rock–Tenn is Local 1014's employer under Local 1014's collective bargaining agreement.

Company, Lynchburg Mill," and Lynchburg Mill responded that Lynchburg Converting, not Lynchburg Mill, contracted out the work at Lynchburg Converting. Lynchburg Mill's response, therefore, was a clear signal, even if not expressly couched in jurisdictional terms, that the arbitrator must confine his decision to the parties to the collective bargaining agreement as that agreement defined those parties. In marked contrast, the employer in *Richmond, Fredericksburg & Potomac R.R.* complained that the arbitrator interpreted statutes and case law in reaching his decision after the employer had submitted the issue to the arbitrator without limiting the arbitrator's sources of authority. *See id.* at 278–80.

### IV.

For the reasons stated, the court dismisses Rock–Ten's complaint for lack of jurisdiction and denies enforcement of the arbitrator's award.[3]

### FINAL ORDER

In accordance with the memorandum opinion entered this day, it is hereby **ORDERED AND ADJUDGED** that the complaint of Rock–Tenn Company is **DISMISSED** and that the counterclaim of United Paperworkers International Union, AFL–CIO, Local 1014 for enforcement of the arbitrator's award is **DENIED.**

---

3. After oral argument, the court directed the parties to clarify whether Rock–Tenn's divisions were separate corporations. From those submissions it appears that Lynchburg Mill and Lynchburg Converting were subdivisions of the Paperboard Products Division, itself an unincorporated division of Rock–Tenn Mill Division, Inc., a subsidiary of Rock–Tenn Company, a Georgia corporation. Given the court's decision not to enforce the award, the court declines to decide whether the corporate structure is an additional impediment to enforcement of the award.