**ROCK–TENN COMPANY,**
Plaintiff–Appellee,

v.

**UNITED PAPERWORKERS INTERNATIONAL UNION, AFL–CIO,**
Defendant–Appellant.

No. 98–2039.

United States Court of Appeals,
Fourth Circuit.

Argued: May 5, 1999.

Decided: July 13, 1999.

---

9. See note 1, *supra.*

**ARGUED:** James J. Vergara, Jr., Vergara & Associates, Hopewell, Virginia, for Appellant. Larry E. Forrester, Marietta, Georgia, for Appellee. **ON BRIEF:** Catherine M. Hobart, Christopher S. Enloe, Smith, Currie & Hancock, L.L.P., Atlanta, Georgia, for Appellee.

Before WILKINSON, Chief Judge, and WIDENER and MOTZ, Circuit Judges.

Reversed and remanded by published opinion. Judge DIANA GRIBBON MOTZ wrote the opinion, in which Chief Judge WILKINSON and Judge WIDENER joined.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

After voluntarily submitting a dispute to arbitration, Rock–Tenn Company sought to vacate the resulting award. The district court found that the arbitrator had no authority to resolve the dispute and so refused to enforce the arbitration award. *See Rock–Tenn Co. v. United Paperworkers Int'l Union,* 14 F.Supp.2d 835 (W.D.Va.1998). Because by its conduct Rock–Tenn consented to arbitration of the dispute and waived any subsequent judicial challenge to its arbitrability, and because we cannot conclude that the award failed to draw its essence from the underlying agreement, we reverse and remand for

entry of an order enforcing the arbitrator's award.

## I.

Rock–Tenn makes recycled paperboard products at two plants in Lynchburg, Virginia. At its mill facility, Rock–Tenn manufacturers recycled paperboard; at its converting facility, it produces laminated recycled paperboard. Until January 1995, Rock–Tenn operated these facilities as one unit with one union, Local 1014, representing all Rock-Tenn employees. As part of a reorganization, Rock–Tenn divided its mill and converting facilities into separate divisions, but not separate corporate entities. Rock–Tenn then entered into a Memorandum of Agreement with Local 1014 by which the union agreed that the mill and converting facilities would become separate bargaining units (hereafter Mill and Converting, respectively), with Local 1014 representing Mill employees and Local 433 representing Converting employees.

The employer then entered into a collective bargaining agreement with Local 1014. (This is the only collective bargaining agreement at issue here or contained in the record; however, the parties stated at oral argument that a virtually identical agreement governs relations with the Converting employees represented by Local 433.) The agreement provides for arbitration of grievances "involving the interpretation, or compliance with" the agreement and is signed "For the company: Rock–Tenn Company" by its Vice President and General Manager.

The dispute underlying the present litigation concerns the performance of "trailer shifting, handling LP gas and the removal of trash" at Converting. Before the 1995 reorganization, this work was performed by shifters and truck drivers from the Mill facility; both before and after the reorganization, Local 1014 represented these employees. Moreover, for a time after the reorganization (from January through October 1995), these same employees continued to do this work at the Converting plant as well as at the Mill. Converting paid Mill's management an hourly rate for the work the Mill employees performed. On October 30, 1995, as a cost–cutting measure, Converting began contracting these services from an outside vendor, thus eliminating this work from the category of jobs performed by the Mill employees.

In response, Local 1014, on behalf of the Mill employees impacted by the contracting-out, filed a grievance against Rock–Tenn Company. The union requested that the work be returned to Mill employees and that Mill truck drivers and shifters be paid time and one half and double time for the hours worked by the contractors. Rock–Tenn denied the allegations in the grievance, asserting that its Mill division had not contracted out any of the disputed work and thus that it did not violate the applicable collective bargaining agreement.

Local 1014 brought the matter to arbitration, without objection from Rock–Tenn. The arbitrator recognized that Rock–Tenn had organized the operation of its "business into two separately managed units," but concluded that this "internal reorganization of functions by the Company has not succeeded in removing [Rock–Tenn] from the scene." The arbitrator concluded that Mill and Converting were simply units of the Rock–Tenn Company, which "will respond to the management of that Company." For these reasons, the arbitrator determined that Rock–Tenn, rather than just its Mill division, was the employer under the collective bargaining agreement with Local 1014 and that Rock–Tenn had violated that agreement by contracting out the work. The arbitrator's award required that Rock–Tenn return the work to employees at the Mill facility and that affected Mill employees be paid straight time for the hours worked by outside contractors.

Unhappy with the award, Rock–Tenn filed an action in federal court against Local 1014 under § 301 of the Labor Man-

agement Relations Act of 1947, 29 U.S.C.A. § 185 (West 1998), seeking "a declaratory judgment that it is not bound by the collective bargaining agreement." *Rock–Tenn,* 14 F.Supp.2d at 837. The union counter-claimed for enforcement of the award. The district court first dismissed Rock–Tenn's complaint for lack of jurisdiction. *Id.* The court then concluded that the underlying dispute was not arbitrable because Rock-Tenn was not a party to the collective bargaining agreement with Local 1014 and, for this reason, denied the union's request to enforce the arbitration award. *Id.* at 838–39. The union appeals.

## II.

As is often true, "[o]ur decision in this case rests upon a reluctance to undercut a process whose importance to labor-management relations has been reaffirmed repeatedly by Congress and the courts." *Richmond, Fredericksburg & Potomac R.R. Co. v. Transportation Communications Int'l Union,* 973 F.2d 276, 278 (4th Cir.1992). That process, of course, is the grievance-arbitration process.

In agreeing to arbitrate disputes, labor and management have found a way to resolve peacefully and efficiently those problems that frequently bedevil the work place. The agreement to arbitrate constitutes a welcome substitute to strikes, lockouts, and other forms of industrial strife. *See AT & T Tech., Inc. v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("arbitration, rather than strikes or lockouts" is "the preferred method of resolving disputes arising during the term of a collective-bargaining agreement"); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 455, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) ("Plainly the agreement to arbitrate grievance disputes is the quid pro quo for an agreement not to strike.").

In order to preserve the effectiveness of the arbitration process, a court's review of an arbitration award must be extremely limited. Only then will an arbitration award enjoy the finality necessary to make it an attractive and efficient remedy. Thus, courts have consistently recognized and applied a very narrow standard of judicial review to arbitration awards. *See, e.g., Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Remmey v. PaineWebber, Inc.,* 32 F.3d 143, 146 (4th Cir.1994); *Richmond, Fredericksburg,* 973 F.2d at 278. As the Supreme Court explained in *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987):

> The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.
>
> ... [A]s long as the arbitrator *is even arguably construing or applying the contract* and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Id.* at 38, 108 S.Ct. 364 (emphasis added).

## III.

The district court properly recognized that "judicial review of an arbitration award is 'among the narrowest known to the law.'" *Rock–Tenn,* 14 F.Supp.2d at 837 (quoting *Richmond, Fredericksburg,* 973 F.2d at 278). Nonetheless, the court determined that it could refuse to enforce the award in this case because the arbitrator had assertedly exceeded his authority under the collective bargaining agreement. The court reasoned:

> Because the right to compel arbitration is contractual, [ ] only a party that has agreed to arbitrate can be required to arbitrate, and whether it has so agreed is a matter of contract interpretation for the court, not the arbitrator. It follows that only the parties to the agreement

are bound, and the determination of who those parties are is for the court. The court, in making that determination here, concludes that Lynchburg Mill, rather than Rock–Tenn, was Local 1014's employer under Local 1014's collective bargaining agreement.

*Id.* (citations omitted).

 The district court's initial premise is unassailable: only a party that has agreed to arbitrate can be required to arbitrate. *See, e.g., Marrowbone Dev. Co. v. District 17, United Mine Workers,* 147 F.3d 296, 300 (4th Cir.1998). The court erred, however, in failing to recognize that parties can manifest their agreement to arbitrate by conduct, for example by submitting without objection to arbitration of a dispute. *See, e.g., ConnTech Dev. Co. v. University of Conn. Educ. Properties Inc.,* 102 F.3d 677, 685 (2d Cir.1996); *International Chem. Workers Union, Local No. 566 v. Mobay Chem. Corp.,* 755 F.2d 1107, 1110 (4th Cir.1985). The court also overstated the rule concerning who decides arbitrability; although the determination of whether a party has agreed to arbitrate *generally* falls within the province of courts rather than of arbitrators, the parties can agree to arbitrate arbitrability. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *AT & T,* 475 U.S. at 649, 106 S.Ct. 1415. This agreement, too, can be demonstrated by the parties' conduct. *See First Options,* 514 U.S. at 944–47, 115 S.Ct. 1920.

 The district court thus failed to appreciate the significance of Rock–Tenn's conduct, including the company's voluntary submission to arbitration of the dispute, its vigorous participation on the merits debate during the arbitration proceedings, and its utter failure during those proceedings to

challenge the arbitrator's authority to determine the dispute, or even to preserve the issue for resolution by the court. We have concluded in similar circumstances that such unconditional submission of an issue to arbitration, without any objection to the arbitrator's authority to decide that issue, "cede[s]" authority to the arbitrator, or represents "consent" to arbitration of that issue. *See, e.g., Richmond, Fredericksburg,* 973 F.2d at 280; *Mobay,* 755 F.2d at 1110. Other courts have characterized such conduct as a "waiver" of the right to lodge a later challenge to the arbitrator's authority in court. *See, e.g., Fortune, Alsweet & Eldridge, Inc. v. Daniel,* 724 F.2d 1355, 1357 (9th Cir.1983).

 However viewed, we and other courts have consistently held that "a party to arbitration cannot voluntarily engage in the arbitration of the issues submitted to the arbitrator and then attack the award on grounds not raised before the arbitrator." *United Food & Comm. Workers v. Marval Poultry Co., Inc.,* 876 F.2d 346, 352 (4th Cir.1989) (internal quotation marks omitted). In such circumstances "there is no justification for drawing the inference that the arbitrator may have exceeded his authority." *Mobay,* 755 F.2d at 1112; *see also Owen-Williams v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 907 F.Supp. 134, 137 (D.Md.1995), *aff'd,* 103 F.3d 119, 1996 WL 688219 (4th Cir.1996)(table); *Nghiem v. NEC Electronic, Inc.,* 25 F.3d 1437, 1440 (9th Cir. 1994); *Jones Dairy Farm v. Local No. P–1236, United Food & Commercial Workers Int'l Union,* 760 F.2d 173, 175–76 (7th Cir.1985); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1,* 611 F.2d 580, 584 (5th Cir.1980).[1] Thus, even when a party could

---

1. Nor is *A.T. Massey Coal Co., Inc. v. International Union, United Mine Workers,* 799 F.2d 142 (4th Cir.1986), upon which Rock–Tenn heavily relies, to the contrary. There, Massey was expressly exempted from a collective bargaining agreement that bound its affili-

ates. The union nonetheless sought to invoke an arbitration clause in that agreement in a dispute with the company. Rather than submitting to arbitration, Massey challenged the arbitrator's authority in court prior to the arbitration. On those facts, no one even ar-

have refused arbitration in the first instance, and even when the issue resolved by the arbitrator is one "of law," if that party "voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it." *Jones Dairy*, 760 F.2d at 175–76.

■■■ Courts reviewing whether a party has agreed to arbitrate the arbitrability of an issue look for "clea[r] and unmistakabl[e]" evidence of such an intent. *See AT & T*, 475 U.S. at 649, 106 S.Ct. 1415; *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *A.T. Massey Coal Co., Inc. v. International Union, United Mine Workers*, 799 F.2d 142 (4th Cir.1986). Recently, the Supreme Court reiterated this standard and clarified its rationale. The Court explained that "the law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement.'" *First Options*, 514 U.S. at 944–45, 115 S.Ct. at 1924. In considering "whether" a dispute is arbitrable, the presence of a valid arbitration clause creates the presumption that the parties must bring the dispute to an arbitrator. *Id.* In contrast, when analyzing "who" decides whether a dispute is arbitrable, the presumption is that a court, not an arbitrator, will determine arbitrability. *Id.* It is for this reason that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* at 974, 115 S.Ct. 1920 (alterations in original).

The record in this case presents precisely such evidence. By word and deed, the parties repeatedly demonstrated their intent to allow the arbitrator to decide whether the dispute was arbitrable. Of course, the parties disagreed as to the merits of whether the employer violated the collective bargaining agreement with Local 1014—specifically, the parties disagreed as to whether the employer that made the contracting-out decision was bound by the collective bargaining agreement with Local 1014—but they agreed that the arbitrator should decide this question.

The parties signaled this agreement from the outset. First, Local 1014 directed its original grievance to "Rock–Tenn Co." and asserted that "The Company is in violation of the current labor agreement." Rock-Tenn's Vice President and General Manager denied this allegation in a written response that addressed the merits, arguing that the company had not violated the collective bargaining agreement. When Local 1014 filed for arbitration of the grievance, it again posed the issue for arbitration as "whether Rock–Tenn Company violated the labor agreement"; in response, Rock–Tenn made no assertion that the arbitrator lacked authority over the matter. Rather, the company contended that the issue to be decided *by the arbitrator* was "whether the employer committed any act or was guilty of any omission in violation of the agreement." Furthermore, both parties (with Rock–Tenn represented by legal counsel) participated in the arbitration proceedings and presented evidence to the arbitrator on this question, *i.e.*, whether the employer that made the contracting-out decision was bound by the collective bargaining agreement with Local 1014.

Moreover, after the arbitration hearing, both parties submitted written briefs on

---

gued that the parties had agreed to arbitrate the arbitrability of the dispute. However, even in those circumstances we noted the possibility of such an agreement. *See id.* at 146 (*"[u]nless the parties clearly and unmis-*

*takably provide otherwise,* the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.") (quoting *AT & T,* 475 U.S. at 649, 106 S.Ct. 1415) (emphasis added).

this dispute between "Rock–Tenn Company" and the union. The company titled its brief "In the Matter of the Arbitration of Rock–Tenn Company, Employer," submitted the brief on "behalf of Rock–Tenn Company," and again maintained that *the arbitrator* should find that the union has not shown "any conduct on the part of the company that was arguably violative of the Collective Bargaining Agreement." Rock–Tenn maintained that the union sought a remedy against "the employer for circumstances which the employer did not create and which the employer [was] without the ability to change" because "the Mill [could] not make the Converting operation accept [its] services and pay its wage rates when Converting [chose] not to do so." Since the union had assertedly "failed to present any facts to support an allegation of contract violation," Rock–Tenn claimed Local 1014 "had failed to raise an issue capable of resolution in this forum." In other words, Rock–Tenn disputed "whether" the dispute was arbitrable, but at no point in the arbitration proceedings did Rock–Tenn dispute "who" could resolve that question. The company never claimed that the arbitrator lacked authority over the matter, or even sought to reserve the question of the arbitrator's authority for later resolution by a court. Instead, Rock–Tenn voluntarily submitted to arbitration of this dispute and participated fully in the arbitration proceedings.[2]

In sum, although during arbitration Rock–Tenn argued that Mill and Converting were separate operations and thus that Converting's decision to contract out work

formerly performed by Mill employees at the Converting facility did not violate the collective bargaining agreement with Local 1014, Rock–Tenn never objected in any manner to the arbitrator's authority to resolve the question of whether such a breach had occurred. Because Rock–Tenn thus clearly and unmistakably evidenced its intent to have the arbitrator determine the arbitrability and merits of this dispute, it cannot now maintain "that the arbitrator had no authority to resolve it." *Jones Dairy*, 760 F.2d at 175–76.

## IV.

▪ The sole remaining issue is the familiar one of whether the arbitration award draws its essence from the collective bargaining agreement. Rock–Tenn asserts that it does not; it contends that the award reflects the arbitrator's own idea of industrial justice and should therefore be vacated. *See Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir.1996) (court can vacate an arbitration award if it "violates well-settled and prevailing public policy, fails to draw its essence from the collective bargaining agreement or reflects the arbitrator's own notions of right and wrong") (citing *Misco*, 484 U.S. at 36, 108 S.Ct. 364).

Specifically, Rock–Tenn argues that the arbitrator's award fails to draw its essence from the agreement because the arbitrator ignored the plain language of the contract when it determined that Rock–Tenn, and not just its Mill division, was a party to the collective bargaining agreement with Local

**2.** We note that the district court rejected the contention that "Rock–Tenn submitted to the arbitrator's jurisdiction without objection" because:

> Under the collective bargaining agreement, the "the company"—the employer—is "Rock–Tenn Company, Lynchburg Mill," and Lynchburg Mill responded [in the post-hearing brief before the arbitrator], that Lynchburg Converting, not Lynchburg Mill, contracted out the work at Lynchburg Converting. Lynchburg Mill's response, therefore, was a clear signal, even if not express-

ly couched in jurisdictional terms, that the arbitrator must confine his decision to the parties to the collective bargaining agreement as that agreement defined those parties.

*Rock–Tenn*, 14 F.Supp.2d at 838–39. That analysis confuses Rock–Tenn's vigorous contention on the merits before the arbitrator—that no employer bound by the collective bargaining agreement made the contracting-out decision—with the company's total failure to raise any claim before the arbitrator that he lacked authority to decide this question.

1014. We disagree. The collective bargaining agreement can fairly be read as the arbitrator interpreted it—that is, as an agreement that bound Rock–Tenn Company and Local 1014. Although the agreement states that it is "between Rock–Tenn Company, Lynchburg Mill" and Local 1014, the reference to "Lynchburg Mill," could merely be an indication of which division's employees are bound by the agreement rather than a notice that the Rock–Tenn company has no obligations under the agreement. *See id.; Richmond, Fredericksburg,* 973 F.2d at 281 (court can not vacate an arbitration award simply because it would have decided issue differently). Furthermore, the arbitrator's interpretation of the collective bargaining agreement draws support from the fact that a vice president of Rock–Tenn signed the collective bargaining agreement "For the Company: Rock–Tenn Company," with *no* mention of the Mill division. Thus, according to the signature line of the agreement, the employer bound by the agreement is Rock–Tenn Company, not the Mill division.

■ A court "should not reject an award on the ground that an arbitrator misread the contract" if "the arbitrator is even arguably construing or applying the contract." *Misco,* 484 U.S. at 38, 108 S.Ct. 364; *see also Upshur Coals v. United Mine Workers,* 933 F.2d 225, 228–30 (4th Cir.1991). Here, as in *Upshur Coals,* the arbitrator's interpretation of the collective bargaining agreement was certainly a "plausible" one. 933 F.2d at 230. Consistent with the extremely deferential standard of review mandated by the Supreme Court, we must conclude that the arbitration award in this case drew its essence from the agreement.

### V.

Rock–Tenn's submission of this dispute to arbitration, without objection or reservation, bars it from now challenging the arbitrator's authority over the dispute. Furthermore, the arbitrator's resolution of

the dispute, while not based on the only possible interpretation of the collective bargaining agreement, certainly constituted a plausible interpretation of it, and so the resulting award must be held to have drawn its essence from the agreement. Accordingly, we reverse the judgment of the district court and remand for entry of an order enforcing the arbitration award.

*REVERSED AND REMANDED.*